Michael C. Wenzel, State Bar No. 215388
Amy Leifur Halby, State Bar No. 287216
BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile: (415) 353-0990
Email: mwenzel@bfesf.com
          ahalby@bfesf.com

Attorneys for Defendants
COUNTY OF ALAMEDA, CITY OF DUBLIN,
SHERIFF GREGORY J. AHERN,
ACSO LIEUTENANT ROBERT MCGRORY,
ASCO COMMANDER DENNIS HOUGHTELLING and
ASCO OFFICER PHILLIP CORVELLO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUI JIE JIN, individually,<br><br>        Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY, a public entity; CITY OF DUBLIN, a public entity; SHERIFF GREGORY J. AHERN; ACSO LIEUTENANT ROBERT MCGRORY; ASCO COMMANDER DENNIS HOUGHTELLING; ASCO OFFICER PHILLIP CORVELLO; and DOES 1-10, Jointly and Severally,<br><br>        Defendants. | Case No. C 3:18-cv-04885<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE PRAYER FOR PUNITIVE DAMAGES**<br>[FRCP Rule 12(b)(6) and Rule 12(f)]<br><br>**DEFENDANTS' DEMAND FOR JURY TRIAL**<br><br>Date:        October 22, 2018<br>Time:        9:30 a.m.<br>Location:  Courtroom A, 15th Floor<br><br><br>**Hon. Sallie Kim** |

# TABLE OF CONTENTS

**Page**

NOTICE ..............................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED ................1

II.     STATEMENT OF FACTS ALLEGED IN COMPLAINT ....................................2

III.    LEGAL ARGUMENT ..............................................................................................4

    A.      Dismissal Under FRCP Rule 12(b)(6) Is Proper .................................................4

    B.      Count One Fails To State A Claim For Violation Of Title II Of The ADA ........................5

    C.      Count Two Fails To State A Claim Under Section 504 Of The Rehabilitation Act ...........7

    D.      Count Three For Violation Of Cal. Govt. Code §11135 Is Unsupported By Facts ............7

    E.      Count Four Fails To State A Claim For Violation Of JIN's First Or Fourteenth Amendment Rights Under §1983 .......................................................9

    F.      Count Five Fails To State Claims For Supervisory Or *Monell* Liability Under §1983..........................................................................................................10

        1.      The Complaint Fails To State §1983 *Monell* Liability Claims ............................10

        2.      The Complaint Fails To State A Supervisory Liability Claim Against AHERN, MCGRORY, or HOUGHTELLING ......................................16

    G.      Count Six Fails To State Claims For Violation Of Civil Code §§51.7 Or 52.1 ...............20

    H.      Count Seven Is Fails To State A Negligence Claim Against All Defendants ..................22

    I.      Count Eight For Assault And Battery Is Unsupported By Facts .......................................23

    J.      The Complaint Fails To State Facts To Support Claims For Injunctive Relief................23

    K.      The Prayer For Punitive Damages Against The Entity Defendants Is Untenable ............25

IV.     CONCLUSION..................................................................................................25

i

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE PRAYER FOR PUNITIVE DAMAGES
*Jin v. County of Alameda, et al.* U.S.D.C. Northern District Case No.: 3:18-cv-04885

# TABLE OF AUTHORITIES

**Cases**

**Page**

*Aguilera v. Baca,*
   510 F.3d 1161 (9th Cir. 2007) ...................................................................16

*Albright v. Oliver,*
   510 U.S. 266 (1994).....................................................................................15

*Arista Records, LLC v. Doe 3,*
   604 F.3d 110, 120 (2d. Cir. 2010)...............................................................17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)....................................................................7, 10, 21, 22

*Austin B. v. Escondido Union School Dist.*
   149 Cal.App.4th 860 (2007) ..................................................................26, 27

*Bd. of the Cnty. Comm'rs. of Bryan Cnty. v. Brown,*
   520 U.S. 397 (1996).................................................................................16, 19

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................8, 10

*Bivens v. Si Unknown Fed. Narcotics Agents*
   403 U.S. 388 (1971) ......................................................................................30

*Burns v. County of King,*
   883 F.2d 819 (9th Cir. 1998) ........................................................................25

*Christie v. Iopa,*
   176 F.3d 1231 (9th Cir. 1999) .................................................................19, 20

*City of Canton v. Harris,*
   489 U.S. 378 (1989)...........................................................................16, 21, 22

*City of Los Angeles v. Heller,*
   475 U.S. 796 (1986)......................................................................................16

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1982)........................................................................................29

*City of Newport v. Facts Concert, Inc.*
   453 U.S. 247 (1981)......................................................................................31

*City of St. Louis v. Praprotnik,*
   485 U.S. 112, 127 (1988).................................................................16, 19, 20

*Clifford v. Regents of Univ. of California,*
   2012 WL 1565702 (E.D. Cal. Apr. 30, 2012)...............................................27

*Connick v. Thompson,*
    563 U.S. 51 (2011).................................................................................................16, 21

*Corales v. Bennett,*
    567 F.3d 554 (9th Cir. 2009) .........................................................................................27

*County of Sacramento v. Lewis*
    523 U.S. 833 (1998)......................................................................................................15

*Crowe v. County of San Diego,*
    608 F.3d 406 (9th Cir. 2010) .........................................................................................25

*Daniels v. Williams,*
    474 U.S. 327 (1986)......................................................................................................15

*Dietrich v. John Ascuaga's Nugget,*
    548 F.3d 892 (9th Cir. 2008) .........................................................................................16

*Dougherty v. City of Covina,*
    654 F.3d 892 (9th Cir. 2011) .........................................................................................21

*Duvall v. County of Kitsap,*
    260 F.3d 1124 (9th Cir.2001) ........................................................................................13

*Fall River Joint Unified School Dist. v. Sup. Court,*
    206 Cal.App.3d 431 (1998) ...........................................................................................14

*Fowler v. Howell*
    42 Cal.App.4th 1746 (1996) ..........................................................................................26

*Frankin v. Gwinnett County Public Schools*
    503 U.S. 60 (1992)........................................................................................................30

*Franklin v. Fox,*
    312 F.3d 423 (9th Cir. 2002) .........................................................................................25

*Gabales v. County of San Joaquin*
    2009 WL 2923037 (E.D. Cal. 2009).............................................................................26

*Gillette v. Delmore,*
    979 F.2d 1342 (9th Cir. 1992) ..................................................................................20, 21

*Gottschalk v. City & Cnty. of San Francisco,*
    964 F.Supp.2d 1147 (N.D. Cal. 2013) ...........................................................................27

*Graham v. Connor*
    490 U.S. 386 (1989)......................................................................................................15

*Harris v. Roderick,*
    126 F.3d 1189 (9th Cir. 1997) .......................................................................................25

*Hartman v. Moore,*
    547 U.S. 250 (2006).................................................................................................15, 16

*Ivey v. Bd. Of Regents of the Univ. of Alaska*,
   673 F.2d 266 (9th Cir. 1982) ................................................................................................23

*J.L. v. Children's Inst., Inc.*,
   177 Cal.App.4th 388 (2009) ..................................................................................................28

*Jeffers v. Gomez*,
   267 F.3d 895 (9th Cir. 2001) .........................................................................................22, 23

*Jett v. Dallas Indep. Sch. Dist.*,
   491 U.S. 701 (1989) ..............................................................................................................20

*Johnson v. City of Vallejo*,
   99 F.Supp.3d 1212, 1218 (E.D. Cal. 2015) .....................................................................19, 22

*Kanae v. Hodson*,
   294 F.Supp.2d 1179 (D. Haw. 2003) ....................................................................................20

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ..............................................................................................................22

*Leer v. Murphy*,
   844 F.2d 628 (9th Cir. 1988) ................................................................................................15

*Lopez v. City of Los Angeles*,
   196 Cal.App.4th 675 (2011) ..................................................................................................28

*Margolis v. Ryan*,
   140 F.3d 850 (9th Cir. 1998) ................................................................................................25

*McMillan v. Monroe Cnty.*,
   520 U.S. 781 (1997) ..............................................................................................................20

*Mendocino Environ. Center v. Mendocino* County,
   192 F.3d 1283 (9th Cir. 1999) ..............................................................................................25

*Mendocino Envtl. Ctr. v. Mendocino Cnty.*,
   14 F.3d 457 (9th Cir. 1994) ..................................................................................................16

*Meyers v. City of Fresno*,
   2011 WL902115 (E.D. Cal. 2011) .........................................................................................27

*Monell v. New York City Dept. of Social Servs.*,
   436 U.S. 658 (1978) .........................................................................................................16, 22

*Monsanto Co. v. Geertson Seed Farms*
   130 S.Ct. 2743 (2010) ...........................................................................................................30

*Moss v. U.S. Secret Service*
   572 F.3d 962 (9th Cir. 2009) ................................................................................................10

*Munoz v. State of California*,
   33 Cal.App.4th 1767 (1995) ..................................................................................................14

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO
STRIKE PRAYER FOR PUNITIVE DAMAGES
*Jin v. County of Alameda, et al.* U.S.D.C. Northern District Case No.: 3:18-cv-04885

*Nadell v. Las Vegas Metro Police Dept.*,
    268 F.3d 924 (9th Cir. 2001) .................................................................................20

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) .................................................................................19

*Park v. Thompson,*
    851 F.3d 910 (9th Cir. 2017) .................................................................................17

*Parratt v. Taylor,*
    451 U.S. 527 (1981) ...............................................................................................15

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,*
    130 F.3d 432 (9th Cir. 1997) .................................................................................16

*Scoog v. Cnty. of Clackamas*,
    469 F.3d 1221 (9th Cir. 2006) ...............................................................................16

*Shoyoye v. Cnty. of Los Angeles,*
    203 Cal.App.4th 947 (2012) ..................................................................................27

*State of Cal. ex rel. Dept. of Transp. v. Superior Court,*
    159 Cal.App.3d 331 (1984) ...................................................................................15

*Taylor v. Mitzel*
    82 Cal.App.3d 665 (1978) .....................................................................................26

*Trevino v. Gates,*
    99 F.3d 911 (9th Cir. 1996) ...................................................................................19

*Turner v. State of Cal.,*
    232 Cal.App.3d 883 (1991) ...................................................................................14

*Venegas v. Cnty. of Los Angeles,*
    32 Cal.4th 820 (2004) ...........................................................................................27

*Watkins v. City of Oakland*,
    145 F.3d 1087 (9th Cir. 1998) ...............................................................................23

*Weinberger v. Romero-Barcelo*
    456 U.S. 305 (1982) ...............................................................................................30

*Wilkerson v. Butler*,
    229 F.R.D. 166 (E.D. Cal. 2005) ..........................................................................31

**Statutes**

California Government Code § 950.2 ...........................................................................26

**Other Authorities**

Title II of the ADA ......................................................................................................11

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE PRAYER FOR PUNITIVE DAMAGES
*Jin v. County of Alameda, et al.* U.S.D.C. Northern District Case No.: 3:18-cv-04885

**NOTICE**

TO PLAINTIFF HUI JIE JIN AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 22, 2018 at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom A, 15th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, defendants COUNTY OF ALAMEDA COUNTY, CITY OF DUBLIN, SHERIFF GREGORY J. AHERN, ACSO LIEUTENANT ROBERT MCGRORY, ASCO COMMANDER DENNIS HOUGHTELLING and ASCO OFFICER PHILLIP CORVELLO will and hereby do move this Court for an order granting dismissal of the claims specified below and contained in plaintiff's complaint, for failure to state any claim upon which relief can be granted, and to strike the prayer for punitive damages as against the CITY and the COUNTY. This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), and Rule 12(f), as set forth more fully in the memorandum of points and authorities below, on the grounds that dismissal is appropriate because the complaint fails to allege facts sufficient to state each of the claims upon which relief can be granted against defendants. The prayer for an award of punitive damages asserted against defendants is improper and should be stricken because punitive damages are not recoverable against public entities. This motion is based on this notice, the memorandum of points and authorities, papers and pleadings on file herein, and on such oral and documentary evidence as may be adduced at the hearing of this matter. Defendants also hereby request a jury trial in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED**

Plaintiff HUI JIE JIN brought this action against defendants COUNTY OF ALAMEDA COUNTY ("COUNTY"), the CITY OF DUBLIN ("CITY"), SHERIFF GREGORY J. AHERN ("AHERN"), ACSO LIEUTENANT ROBERT MCGRORY ("MCGRORY"), ASCO COMMANDER DENNIS HOUGHTELLING ("HOUGHTELLING") and ASCO OFFICER PHILLIP CORVELLO ("CORVELLO") for violation of the ADA, Rehabilitation Act, civil rights under 42 U.S.C. §1983 and state law torts arising out of her arrest on July 21, 2017. The complaint fails to state facts sufficient to state the claims asserted, and JIN fails to meet her pleading burden to state facts showing a plausible right to relief against defendants on each of the claims asserted. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

1

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE PRAYER FOR PUNITIVE DAMAGES
*Jin v. County of Alameda, et al.* U.S.D.C. Northern District Case No.: 3:18-cv-04885

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).) Specifically, dismissal is warranted because:

(1) Count one is unsupported by facts to state a claim for violation of Title II of the Americans with Disabilities Act (ADA);

(2) Count two is unsupported by facts to state a claim for violation of Sec. 504 of the Rehabilitation Act;

(3) Count three is unsupported by facts to state a claim for violation of Cal. Govt. Code §11135;

(4) Count four is unsupported by facts to state a §1983 claim violation of JIN's First and Fourteenth Amendment rights;

(5) Count five is unsupported by facts to state a §1983 *Monell* or supervisory liability claim;

(6) Count six is unsupported by facts to state a claim under the Unruh Civil Rights Act;

(7) Count seven is unsupported by facts to state a claim for negligence;

(8) Count eight is unsupported by facts to state a claim for assault and battery;

(9) JIN's claims for injunctive relief are untenable; and

(10) The prayer for punitive damages against all defendants should be stricken to the extent it is asserted against the CITY and the COUNTY.

## II. STATEMENT OF FACTS ALLEGED IN COMPLAINT

JIN alleges that on July 21, 2017 she was stopped by Officer CORVELLO after he allegedly saw her jaywalking in Dublin. (Plaintiff's Complaint, Dkt. No. 1 ("Complaint"), ¶23.) JIN alleges that she is a 76-year old woman, and claims she has "physical disabilities common with old age," particularly, trouble walking and arthritis, and claims she has a complete loss of hearing in her left ear and 10% hearing in her right ear. She claims she is legally deaf and primarily communicates through American and Chinese sign language. (Id. ¶22.) JIN alleges CORVELLO shouted at her, but she could not hear him because she is "profoundly deaf" and could not understand what he wanted. She claims that as CORVELLO moved towards her she pointed to her ear with one hand and waved the other back and forth to signal that she was deaf. (Id. ¶24.) She claims that CORVELLO understood her gestures because he moved closer to her face and yelled even louder, but "made no attempts to effectively communicate" with her at any time. (Id. ¶25.) JIN claims that a few minutes later CORVELLO waved his handcuffs in her face. She claims she did not know why CORVELLO stopped her, why he was screaming or why he waved his handcuffs, and she claims that video footage from his body camera shows he was demanding JIN's identification and threatening to take her to jail if she failed to produce it. (Id. ¶26.)

2

JIN alleges that sometime later unidentified Alameda County Sheriff's Office (ASCO) and/or CITY officers arrived on scene, and she claims CORVELLO and unidentified officers searched her and her grocery bag without her consent and without explaining what they were doing or why. (Complaint ¶27.) JIN states that she handed CORVELLO her California identification card, disabled senior citizen bus pass and a handwritten card with the name and phone number of her daughter. (Id.)

JIN claims she did not resist arrest or attempt to flee, and she tried to communicate with CORVELLO and other officers through gestures, including clasping her hands together in prayer and repeatedly bowing in front of CORVELLO, which she intended to mean she was asking for mercy. (Complaint ¶28.) She contends on information and belief that her gestures agitated CORVELLO, and she claims he violently twisted her arms behind her back and slammed her to the ground. JIN claims she did not know what was happening or why. She concludes that CORVELLO recognized she could not hear or understand him, yet failed to ensure communication with her "was as effective as communication with others who are not deaf or hard of hearing." (Id. ¶29.)

JIN alleges that that as she lay on the ground, CORVELLO placed a foot or knee on her neck and/or back and handcuffed her hands behind her back, which she claims caused pain in her neck, back, shoulders and elbow and caused her to pass out. (Complaint ¶32.) She claims that after she lost consciousness CORVELLO and unidentified DOES called an ambulance, but continued to "brutalize" her, and re-cuffed her to the ambulance even though she was unconscious, causing injury to her left wrist. (Id. ¶33.) JIN alleges that she was treated for her injuries at the hospital. (Id. ¶34.) She alleges that CORVELLO issued her a citation stating that she was arrested for failing to complete crossing prior to the display of the steady "DON'T WALK" or 'WAIT" signal under Vehicle Code §21456(b) and resisting arrest under Penal Code §148(a). (Id. ¶37.) She claims CORVELLO failed to write a report of the incident, or alternatively, claims defendants destroyed all documents related to her arrest. (Id. ¶38.)

JIN alleges the ACSO conducted an internal affairs investigation of the incident on July 27, 2017 in response to a complaint her counsel filed against CORVELLO. She claims her counsel viewed footage from CORVELLO's body camera with ACSO Officer MCGRORY, and MCGRORY agreed jaywalking was not an arrestable crime and stated that JIN was arrested for failing to produce identification in violation of Penal Code §148(a). She claims her counsel contested the validity of the arrest, but

MCGRORY did not acknowledge her counsel's argument. (Id. ¶39.) JIN alleges that on September 19, 2017, Sheriff AHERN notified her that the ACSO internal affairs investigation had determined that her allegations of unlawful arrest and unnecessary force were unfounded. She claims that AHERN's letter did not address her disability claims. (Id. ¶40.) JIN concludes, on information and belief, that the defendants "conspired to cover up their misconduct and unlawful arrest" by claiming the arrest was justified by her failure to produce identification notwithstanding CORVELLO's body camera video, and by "participat[ing] in a code of silence concerning the unlawful conduct of fellow law enforcement officers." (Complaint ¶¶41-42.) She claims the defendants "obstructed justice" and interfered with her "right to petition the government through the courts for redress of civil rights violations" and attempted to cover up violations of her rights by failing to file arrest or use-of-force reports, improperly conducting internal affairs investigations and using a code of silence to shield fellow officers. (Id. ¶43.)

JIN also concludes the individual defendants acted as "integral participants" with "fundamental involvement in the violation of [her] rights" and permitted the use of unlawful force. (Id. ¶44.) JIN claims that in 2010 the ASCO settled a case with the DOJ and agreed to provide sign language interpreters, auxiliary aids, and services to deaf individuals and to establish nondiscriminatory policies, and she claims the alleged conduct failed to comply with the DOJ agreement. (Id. ¶30.) She further concludes that ASCO and the CITY failed to properly train ASCO officers regarding the rights of deaf individuals, fail to enforce policies regarding communication with deaf or hard of hearing individuals and, fail to provide reasonable accommodations. (Id. ¶31.)

## III.  LEGAL ARGUMENT

### A.  Dismissal Under FRCP Rule 12(b)(6) Is Proper

A pleading that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" is insufficient. (*Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555.) A complaint must contain sufficient factual matter "to 'state a claim to relief that is plausible on its face.'… The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." (*Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).) Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions (*Iqbal*, 556 U.S. at 678-679.)

## B. Count One Fails To State A Claim For Violation Of Title II Of The ADA

To state a claim under Title II of the ADA, a plaintiff must allege facts showing that: " '(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" (*Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017)[1]; *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007).) "As to persons with a hearing disability … a public entity must 'take appropriate steps to ensure that communications' with disabled persons 'are as effective as communications with others.' 28 C.F.R. §35.160(a)." (*Updike*, 870 F.3d at 949.) Under the ADA, a plaintiff must show that she was "excluded from participating in or denied the benefits of a program's services or otherwise discriminated against. '[C]ompensatory damages are not available under Title II or §504 absent a showing of discriminatory intent.'" (*Id.* at 950 (original brackets); *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 1998), *as amended* (Oct. 8, 1998); *Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1135 (9th Cir. 2011), *as amended on denial of reh'g en banc* (Oct. 11, 2001).)

> To show intentional discrimination, this [Ninth] circuit requires that the plaintiff show that a defendant acted with 'deliberate indifference,' which requires 'both knowledge that the harm to a federally protected right is substantially likely, and a failure to act upon that … likelihood.' [Citation.] 'When the plaintiff has alerted the public entity his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.' *Id.* To meet the second prong, the entity's failure to act 'must be the result of conduct that is more than negligent, and involves an element of deliberateness.' *Id.*"

(*Updike*, 870 F.3d at 950-951 (ellipses in original), *citing Duvall*, 260 F.3d at 1139.)

In *Updike,* a deaf arrestee alleged violation of the ADA for the County and State's failure to provide an American Sign Language (ASL) interpreter at his arraignment, and failure to provide an interpreter and other auxiliary aids while he was a pretrial detainee. Updike's claim for violation of the ADA was unsupportable against the State because the failure to provide such aids was based on review of the booking register, which did not note his need for an interpreter, and thus was the result of "bureaucratic slippage that constitute[d] negligence rather than deliberate action or inaction." (*Updike*,

---

[1] Supreme Court petition for writ of certiorari filed March 2, 2018.

870 F.3d at 951-952.) By contrast, during his incarceration as a pretrial detainee he specifically and repeatedly requested an ASL interpreter and a TTY (teletype) but neither was provided, and he was directed to write a statement without either accommodation. (*Id.* at 953.) Under such facts, there was no dispute that County employees were aware of Updike's disability, yet there was no showing the County investigated his need for accommodations pursuant to any of his requests (*Id.* at 954.)

JIN's complaint fails to show a violation of the ADA by the COUNTY or CITY. First, regarding claims against the COUNTY, the complaint fails to show that it was aware JIN was a "qualified individual with a disability," or any "discriminatory intent." The complaint states that CORVELLO contacted JIN for an alleged jaywalking violation and shouted at her. She claims she is "profoundly deaf" and could not hear or understand what he wanted, and she pointed to her ear and waved her other hand to signal she was deaf. Notwithstanding JIN's conclusion that CORVELLO understood her gestures, no facts are stated supporting her conclusion that he understood she was deaf, as opposed to being unable to understand or communicate in the English language, or for some other reason. (Complaint ¶¶24-25.) No facts show that JIN provided any written documentation or other communication that she was deaf. Claims that she provided a vaguely described "disable [sic] senior citizen bus pass" fails to show the bus pass identified a particular disability or somehow would have notified CORVELLO that JIN was deaf; and allegations about a handwritten card with the name and phone number of her daughter fails to show the card included information about JIN having a hearing disability. (Id. ¶27.) The complaint fails to state facts showing CORVELLO was even aware that JIN was deaf. Further, there are no facts showing deliberate indifference to JIN's claimed disability. Unlike *Updike,* no facts show JIN effectively communicated that she was deaf, that she requested hearing accommodations, or that requested accommodations were denied. JIN's complaint shows only negligence, at best, in failing to provide accommodations for a hearing disability and fails to state facts to satisfy the element of deliberateness. (*Updike,* 870 F.3d at 951.) The complaint thus fails to state an ADA claim against the COUNTY.

Second, JIN's ADA claims against the CITY is unsupported by facts. There are no facts showing that JIN had any contact with CITY employees, that the CITY was aware she had a disability, or that it deliberately failed to provide her with a needed accommodation. To the extent JIN is asserting claims against the CITY based on her allegations that it is responsible for managing, directing and controlling

ACSO police officers provided to the CITY under contract with the ACSO, her conclusions of CITY responsibility are unsupported by facts[2], and in any event, her claims would still fail for the same reasons the ADA claims against the COUNTY fail.

### C. <u>Count Two Fails To State A Claim Under Section 504 Of The Rehabilitation Act</u>

To state a §504 claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." (*Updike,* 870 F.3d at 949; *O'Guinn.,* 502 F.3d at 1060; *Duvall,* 260 F.3d at 1135.) Like claims under the ADA, §504 claims require plaintiffs to show they were excluded from participating or denied the benefits of a program's services or otherwise discriminated against. (*Updike*, 870 F.3d at 950.) "[C]ompensatory damages are not recoverable under … §504 absent a showing of discriminatory intent," which "requires that the plaintiff show that a defendant acted with "deliberate indifference." (*Id.*) As set forth in Section "B" above, the complaint fails to show deliberate indifference to JIN's claimed disability. JIN fails to meet her burden to show a plausible right to relief under §504 against the COUNTY or the CITY.

### D. <u>Count Three For Violation Of Cal. Govt. Code §11135 Is Unsupported By Facts</u>

JIN's §11135 claim should be dismissed for failure to show exhaustion of administrative remedies. California Govt. Code §11135 provides in relevant part that "[n]o person in the State of California shall, on the basis of … physical disability … be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is … funded directly by the state, or receives any financial assistance from the state." While §11135 may be enforced by a civil action, "regulations implementing the section plainly refer to an exhaustion requirement." (*J.E.L. v. San Francisco Unified Sch. Dist.,* 185 F.Supp.3d 1196, 1201 (N.D. Cal. 2016.) A §11135 claim thus should be dismissed where a plaintiff fails to allege facts showing compliance with the exhaustion requirements. (*Id.*; *Santos v. Merrit Coll.,* 2008 WL 2622792, at *3 (N.D. Cal. 2008); *Aikins v. St. Helena Hosp.*, 843 F.Supp.1329, 1340-1341 (N.D. Cal. 1994), regulations implementing §1135 appear "to require exhaustion of administrative remedies as a prerequisite to suit for violation of … section 11135.

---

[2] The Sheriff and deputy officers are COUNTY employees, and no facts are alleged showing the CITY has any authority to manage, direct, or control COUNTY officers. (Cal. Govt. Code §§24205, 31904.)

Plaintiffs have made no showing of exhaustion. … The Court accordingly dismisses plaintiffs' claims under section 11135.") JIN's complaint states no facts showing she exhausted administrative remedies related to her §11135 claim, thus she fails to satisfy the prerequisites for a suit for violation of §11135. Count three should be dismissed for failure to exhaust administrative remedies.

Count three is also barred on the additional basis that JIN fails to state *facts* showing compliance with the Government Claims Act. Government Code §945.4 requires as a prerequisite to an action for money or damages against a public entity the timely presentation of a written claim to the public entity, and the entity's action or rejection of the claim. (Govt. Code §945.4; *State of Cal. v. Superior Court (Bodde),* 32 Cal.4th 1234, 1240-1244 (2004); see also Govt. Code §950.2.) "In federal court, the failure to allege facts that either demonstrate or excuse compliance with the Government Claims statutes will subject a state law claim to dismissal. *Mangold v. Cali. Pub. Utils. Comm'n,* 67 F.3d 1470, 1477 (9th Cir. 1995); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988)." [Emphasis added.] (*Hill v. City of Clovis,* No. 1:11–cv–1391 AWI SMS, 2012 WL 787609 at *10 (E.D. Cal. 2012).)

JIN's complaint vaguely states she "timely noticed Defendants Alameda County _or_ the City of Dublin of the tort claims in this Action pursuant to Cal. Govt. Code 910 *et seq.* on or around July 22, 2017." (Compl. ¶20, emphasis added.) The complaint appears purposefully vague as to which entity, if either, JIN allegedly submitted a timely claim to and is insufficient to satisfy her burden to show compliance with the Claims Act as to each entity she is suing. To the extent a purported claim was submitted to the COUNTY, JIN fails to show compliance with the Claims Act as to the CITY; and to the extent the allegations are construed as submission of a claim to the CITY, she fails to show compliance with the claim requirements as to the COUNTY. No facts are alleged indicating the contents of the purported claim, and no facts are stated showing that the purported claim comported with the requirements of Govt. Code §910. Further, it is well settled that "each cause of action must have been reflected in a timely claim." (*Fall River Joint Unified Sch. Dist. v. Sup. Court*, 206 Cal.App.3d 431, 434 (1998); *Munoz v. State of Cal.,* 33 Cal.App.4th 1767, 1776 (1995).) "[T]he factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely the complaint is vulnerable to a demurrer or motion for judgment on the pleadings if it alleges a factual basis for recovery which is not fairly reflected in the written claim." (*Fall River*, 206 Cal.App.3d

at 434; *Turner v. State of Cal.* 232 Cal.App.3d 883, 888 (1991).) "Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity." (*State of Cal. ex rel. Dept. of Transp. v. Superior Court,* 159 Cal.App.3d 331, 336 (1984).) JIN's complaint states no facts indicating that her §11135 claim was fairly reflected in any written claim submitted to the COUNTY or the CITY.

### E. Count Four Fails To State A Claim For Violation Of JIN's First Or Fourteenth Amendment Rights Under §1983

To state a §1983 claim, plaintiffs must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." (*Leer v. Murphy,* 844 F.2d 628, 632-633 (9th Cir. 1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 328 (1986).) The first step in any §1983 action "is to identify the specific constitutional right allegedly infringed." (*Albright v. Oliver,* 510 U.S. 266, 271 (1994).) "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment…must be the guide for analyzing these claims.'" (*Albright,* 510 U.S. at 271, 273; *Graham v. Connor*, 490 U.S. 386, 394 (1989).) "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." (*Albright* at 274; *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998); *Graham,* 490 U.S. at 395.) JIN's complaint asserts claims for violation of her Fourth and Fourteenth Amendment rights based on allegations of unreasonable search and seizure, false arrest and excessive force. (Complaint ¶69.) The Fourth Amendment provides an explicit textual source of protection against unreasonable searches and seizures; thus, JIN's Fourteenth Amendment claims are untenable and should be dismissed.

JIN's First Amendment claims also are unsupported by facts. The "First Amendment prohibits government officials from subjecting an individual to retaliatory actions…for speaking out." (*Hartman v. Moore*, 547 U.S. 250, 256 (2006).) To establish a §1983 First Amendment claim, a plaintiff must show that: (1) he was engaged in a constitutionally protected activity; (2) the defendant's retaliatory action caused him to suffer an injury that would likely deter a person of ordinary firmness from engaging in that protected activity; and (3) "must ultimately prove that Defendants' desire to cause the chilling effect was

a but-for cause of Defendants' action." (*Dietrich v. John Ascuaga's Nugget,* 548 F.3d 892, 900-901 (9th Cir. 2008) (brackets omitted), *quoting Scoog v. Cnty. of Clackamas,* 469 F.3d 1221, 1232 (9th Cir. 2006); *Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 14 F.3d 457, 464 (9th Cir. 1994).) A plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action. (*Hartman,* 250 U.S. at 259.) The complaint fails to state facts showing that CORVELLO's actions were retaliatory or that any retaliatory animus caused his actions. JIN's First Amendment claims are unsupported by necessary facts and should be dismissed.

### F. Count Five Fails To State Claims For Supervisory Or *Monell* Liability Under §1983

#### 1. The Complaint Fails To State §1983 *Monell* Liability Claims

"A municipality cannot be held liable … under §1983 on a *respondeat superior* theory." (*Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).) Local governing bodies can be sued directly under §1983 only where the alleged unconstitutional conduct is the result of an official policy, pattern or practice. (*Id.* at 690.) A municipality is subject to liability under §1983 only when a violation of a federally protected right can be attributed to (1) an express municipal policy, such as an ordinance, regulation or policy statement (*Monell* at 658); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law" (*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); (3) the decision of a person with "final policymaking authority" (*Id.* at 123); or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights (*City of Canton v. Harris,* 489 U.S. 378 (1989). Plaintiffs must show a sufficient causal connection between the enforcement of the municipal policy or practice and the violation of their federally protected right. (*Harris* at 389; *Connick v. Thompson,* 563 U.S. 51, 60 (2011).) A municipality is "liable under § 1983 only where its policies are the moving force behind the constitutional violation." (*Harris* at 389; *Bd. of the Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1996).) "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." (*Brown* at 405; *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997); *AE ex rel. Hernandez* at 636.) Further, municipal liability is contingent on an underlying violation of constitutional rights. (*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Aguilera v. Baca*, 510 F.3d 1161, 1174 (9th Cir. 2007).)

### a. No COUNTY Or CITY Pattern, Policy, Or Custom Is Shown

To show municipal liability based on a custom or practice, the critical issue is whether there was a particular custom or practice that was so widespread as to have the force of law. (*Brown,* 520 U.S. at 404.) "The custom or policy must be a 'deliberate choice to follow a course of action…made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" (*Castro v. Cnty. of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016), *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) (plurality opinion).) "It is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [parties]." (*Castro,* 833 F.3d at 1076; *City of Canton,* 489 U.S at 392.) Without allegations of plausible facts supporting a policy or custom, a *Monell* claim should be dismissed. (*AE ex rel.,* 666 F.3d at 637; *Sanchez v. City of Fresno,* 914 F.Supp.2d 1079, 1097, fn.7 (E.D. Cal. 2012).)

JIN's complaint concludes that numerous vague, general customs, and policies of the COUNTY and CITY exist, including: tolerating/encouraging unreasonable search and seizure; disability discrimination; excessive force, including the use of deadly force; covering up violations; allowing and encouraging a code of silence among ASCO officers; failing to correct unconstitutional conduct; and improper internal affairs procedures. (Complaint ¶74.) Her conclusions that vague policies, practices, and customs exist are unsupported by any facts and insufficient. Her allegations regarding deadly force and policies related to deadly force are not even relevant to the issues in this case, as there are no facts that deadly force was involved in the incident. JIN is required to show that her conclusions are "based on factual information that makes the inference of culpability plausible." (*Park v. Thompson,* 851 F.3d 910, 929 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d. Cir. 2010).)

Further, JIN fails to state facts to show specific bases for her *Monell* municipal liability claims against the separate defendant entities. The complaint shows that the CITY and COUNTY are distinct municipal entities; the CITY contracts with the COUNTY to provide police services in the CITY; and the individual defendants all are employees of the COUNTY. No facts are alleged showing that the CITY and COUNTY operate jointly, or that either entity establishes policies for the other. JIN's complaint simply concludes a list of policies, practices and customs exist without specifying which entity

promulgated such policies or a particular basis for liability as to each particular entity. The CITY and COUNTY cannot be vicariously liable under §1983 for the policies, practices or customs of another entity, particularly where, as here, the facts alleged show no involvement by any CITY employees.

*Monell* makes clear that "a local government is liable under 1983 for its policies that cause constitutional torts. These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy. … A court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." (*McMillan v. Monroe Cnty. Ala.*, 520 U.S. 781, 784-785 (1997).) Accordingly, JIN must allege facts showing that an official policymaker, authorized to make policy for the CITY regarding law enforcement and the provision of services to disabled persons, caused her particular constitutional violations to impose §1983 liability on the CITY. JIN also must state facts making a similar showing as to the COUNTY. State law may not answer the question as to who is an official policymaker simply by labeling someone a policymaker. Rather, the Court must look at the actual function of a governmental official, in a particular area, while considering the definition of the official's functions under relevant state law. (*Id.* at 785-786.) JIN's complaint states that AHERN, MCGRORY and HOUGHTELLING are all ASCO officers, and under state law they are employees of the COUNTY. (Govt. Code §§24205, 31904.) No facts or authority is stated in JIN'S complaint showing that MCGRORY or HOUGHTELLING have any final policymaking authority on behalf of the COUNTY, and no facts are alleged showing that COUNTY employees AHERN, MCGRORY, and HOUGHTELLING have any final policymaking authority on behalf of the CITY. There are no facts showing that the CITY has any particular policy regarding law enforcement services or services to disabled individuals, and there is no factual basis to impose liability against the CITY for alleged policies of the COUNTY. JIN's attempt to lump the CITY and COUNTY together and impose *Monell* liability on the entities jointly is an attempt to improperly impose vicarious liability on one entity for the alleged policies of another, which Supreme Court authority plainly prohibits. (*Monell*, 436 U.S. at 691, "A municipality cannot be held liable … under §1983 on a *respondeat superior* theory."; *see also, McMillan*, 520 U.S. 781, if the sheriff makes policy for the State the County would not be accountable under §1983 for that policy, but if the sheriff acts as law

enforcement policymaker for the County then the County could be liable.)

JIN's complaint also fails to state facts to support a *Monell* claim based on a widespread practice having the force of law. JIN's factual allegations relate only to her particular incident, and there are no facts showing a practice or custom beyond the subject incident. Unless the policy itself is unconstitutional, or an authorized policymaker committed the unconstitutional act, "Liability for improper custom may not be predicated on isolated or sporadic incidents." (*Johnson v. City of Vallejo*, 99 F.Supp.3d 1212, 1218 (E.D. Cal. 2015), *quoting Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) *holding modified by Navarro v. Block,* 250 F.3d 729 (9th Cir. 2001).) No *facts* are alleged showing other similar incidents in the CITY suggesting a "widespread practice" of sufficient duration, frequency and consistency that "is 'so permanent and well settled as to constitute a custom or usage' with the force of law." (*Praprotnik*, 485 U.S. at 127; *Brown* at 403-404.) The complaint similarly fails to show a widespread practice of the COUNTY having the effect of a COUNTY policy. In fact, complaint alleges that in response to prior complaints about accommodations for deaf individuals, the COUNTY and DOJ entered a settlement agreement to correct the issues related to the lack of such accommodations in February 2010 – which was over seven years before JIN's incident. The complaint states no facts showing any other similar incident in at least the seven years since the DOJ settlement agreement, and there are no facts showing a widespread COUNTY policy.

Moreover, no facts are alleged showing a causal connection between a CITY or COUNTY custom or policy and the alleged violations. (*City of Canton,* 489 U.S at 392.) Instead, the facts alleged state that CORVELLO's alleged conduct was an isolated incident that was not in conformance with a municipal policy. (See e.g., Complaint ¶30.) Factually unsupported conclusions that some vague policy was the "moving force and/or a proximate cause" of JIN's injuries fails to meet JIN's pleading burden and are insufficient. (*AE ex rel. Hernandez,* 666 F.3d at 636.)

### b.    The Complaint Fails to State Facts to Support a Ratification Claim

"To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it." (*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Praprotnik,* 485 U.S., 123-124; *Pembaur,* 475 U.S. at 480-481.) Municipal policymakers must make a conscious, affirmative, deliberate choice to endorse a subordinate's decision and the basis for it. (*Gillette*

13

*v. Delmore*, 979 F.2d 1342, 1347 (9ᵗʰ Cir. 1992).) "[M]ere refusal to overrule a subordinate's completed act does not constitute approval. 'To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983." (*Christie*, 176 F.3d at 1239-1240; *Praprotnik,* 485 U.S at 128-130.) "We decline to endorse this end run around *Monell*." (*Gillette*, 979 F.2d at 1348.) "The Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification," (*Kanae v. Hodson*, 294 F.Supp.2d 1179, 1189 (D. Haw. 2003); *Nadell v. Las Vegas Metro Police Dept.*, 268 F.3d 924, 929-30 (9ᵗʰ Cir. 2001)[3].) Plaintiffs must show policymakers knew of subordinates' unconstitutional conduct before the violations ceased. (*Christie*, 176 F.3d at 1239-1240.)

JIN'S complaint states no facts showing the CITY or COUNTY's authorized policymakers knew of unconstitutional conduct by any officer, before the alleged violations were completed, and approved it. JIN asserts that after the incident, MCGRORY "refused to acknowledge" a wrongful arrest (Complaint ¶39), AHERN notified her that the internal affairs investigation determined that her claims of unlawful arrest and unnecessary force were deemed "unfounded" and he did not address her ADA or §504 claims (Id. ¶40), and AHERN, MCGRORY, and HOUGHTELLING falsely claimed JIN's arrest was justified by her failure to produce identification. (Id. ¶41.) The COUNTY's subsequent investigation and alleged approval of the already completed incident could not have been the moving force behind an incident that already occurred. Further, no facts are stated showing that MCGRORY and HOUGHTELLING are authorized policymakers for the COUNTY in the particular area of internal affairs investigations, or any other area. (*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Praprotnik*, 485 U.S. at 123; *McMillan*, 520 U.S. at 784-786.) JIN states no facts showing that mid-ranking officers are authorized policymakers for the COUNTY. No facts are alleged showing that COUNTY employees AHERN, MCGRORY, or HOUGHTELLING are authorized policymakers for the CITY, and no factual basis is alleged for a §1983 ratification claim against the CITY. Conclusions that the defendants and others "approved, tolerated or ratified" the "unconstitutional actions and/or omissions" (Complaint ¶76), and failed to overrule CORVELLO's already completed acts, is an improper basis for municipal liability

---

[3] Abrogated in part on unrelated grounds, as recognized in *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008).

under §1983 and an improper "end run around *Monell*." (*Gillette*, 979 F.2d at 1348.) Mere recitation of the elements of municipal ratification does not suffice to state a claim. (*Iqbal*, 556 U.S. at 678-679.) JIN's ratification claim should be dismissed.

### c. The Complaint Fails to State a Claim Based on Inadequate Training

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." (*Connick*, 563 U.S. at 61.) Municipal liability on a failure to train theory could attach "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." (*Harris*, 489 U.S. at 388.) "Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under §1983. …Municipal liability under §1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." (*Id.* at 389.) The "focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." (*Id.* at 390-391.) Deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymaker of the city can reasonably be said to have been deliberately indifferent to the need." (*Id.* at 390; *Connick,* 563 U.S. at 62.)

> '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'…A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities… [¶] A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.

(*Connick*, 563 U.S. at 61-62; *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).) Although this is a high standard, "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated … a §1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident. …Thus, permitting cases against cities for their 'failure to train' employees to go forward under §1983 on a lesser standard of fault would result in *de facto*

15

*respondeat superior* liability on municipalities–a result [the Supreme Court] rejected in *Monell*." (*Harris,* 489 U.S. at 391-392.) Inadequate training claims "will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." (*Id.* at 389.)

JIN's complaint is devoid of facts showing what the CITY or COUNTY's training programs were, prior similar acts, or any basis to show the need for more or different training was so obvious, and the alleged inadequacy so likely to result in constitutional violations, which are necessary to meet the high deliberate indifference standard. The complaint does not state facts even showing that the CITY is responsible for hiring, training, supervising, evaluating, etc. COUNTY employees. JIN merely concludes the CITY and COUNTY had policies of inadequate training, and she further concludes, without factual support, that the policy of inadequate training proximately caused the alleged violations of her rights. (Complaint ¶77.) JIN's mere conclusions are not facts showing any plausible right to relief. As the complaint states nothing more than "labels and conclusions" and "a formulaic recitation of the elements" of a *Monell* cause of action, it is insufficient to withstand dismissal.

### 2. The Complaint Fails To State A Supervisory Liability Claim Against AHERN, MCGRORY, or HOUGHTELLING[4]

Vicarious liability is inapplicable in §1983 actions, and government officials are not liable under §1983 for the conduct of their subordinates. (*Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Taylor*, 880 F.2d at 1045; *Jeffers v. Gomez,* 267 F.3d 895, 915 (9th Cir. 2001).) A supervisor "can be found liable in his individual capacity if there is a sufficient nexus between his own conduct and the constitutional violations committed by subordinates." (*Johnson v. City of Vallejo,* 99 F.Supp.3d 1212, 1219 (E.D. Cal 2015); *Preschooler II,* 479 F.3d at 1183.) Supervisors may be liable "under §1983 only if there exists either '(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" (*Starr*, 652 F.3d at 1207*; Jeffers*, 267 F.3d at 915.) "A supervisor is liable for the constitutional violations of his

---

[4] The §1983 official capacity claims against AHERN, MCGRORY, HOUGHTELLING, and CORVELLO are unnecessarily redundant of the claims against the COUNTY and should be dismissed. (*Monell*, 436 U.S. at 690, n.55; *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff*, 533 F.3d 780, 799 (9th Cir. 2008).)

subordinates only if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." (*Taylor*, 880 F.2d at 1045; *Johnson*, 99 F.Supp.3d at 1219.) "A supervisor can be liable … for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."(*Starr,* 652 F.3d at 1208, *quoting Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998).) To adequately plead a supervisory liability claim, "allegations in a complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." (*Starr,* 652 F.3d at 1216.) "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." (*Ivey v. Bd. Of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *Starr,* 652 F.3d at 1216.) The basis for supervisory liability "must be specifically alleged …" (*Jeffers,* 267 F.3d at 915.)

JIN's complaint fails to state facts specifically alleging the bases for her supervisory claims against AHERN, MCGRORY, or HOUGHTELLING. Her claims are based on nothing more than vague assertions that defendants failed to properly hire, train, instruct, supervise, etc. ASCO officers, approved, tolerated, and ratified conduct and failed to institute, require, and enforce proper policies. (Complaint ¶¶74-77.) JIN's factually unsupported conclusions fall well short of the requirement that supervisory liability "must be specifically alleged," and are patently is insufficient to state a §1983 supervisory liability claim against AHERN, MCGRORY, or HOUGHTELLING. (*Jeffers,* 267 F.3d at 915.)

### a.    JIN's "cover-up" claims should be dismissed

Additionally, JIN's allegations regarding a subsequent cover-up, conspiracy to obstruct justice, and interference with her right to petition the government through the courts are vague and unclear as to what, if any, claim JIN is attempting to assert, and insufficient to fairly give defendants notice of the claims against them. (Complaint ¶¶41-43, 74.) To the extent JIN is attempting to assert a denial of access claim, her claim is not ripe and should be dismissed. Claims that police engaged in a cover-up of constitutional violations *may* state a §1983 claim, but only if the "defendants' actions can be causally connected to a failure to succeed in the present lawsuit. However, if plaintiff were to succeed in [the underlying] suit, then his cover-up allegations would be mooted." (*Karim-Panahi,* 839 F.2d at 625.)

Thus, where the ultimate resolution of the underlying suit is undetermined, a cover-up claim is not ripe and should be dismissed. (*Id.*) "[T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. …[O]ur cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." (*Christopher v. Harbury,* 536 U.S. 403, 415 (2002).)

> [W]hen the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

(*Id.* at 416-417; *see also, Waiton v. City of Santa Rosa*, 13-cv-03218 JST, 2014 WL 3362160, at *2 (N.D. Cal. 2014), cover-up claims based on City's repeated denials of requests for a video recording of an incident were dismissed, "A plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's actions.") For this reason, the Ninth Circuit has made clear that, to prevail on a backward-looking denial of access claim that is based on a defendant's cover-up of evidence, a plaintiff must demonstrate that the defendant's cover-up rendered other available remedies ineffective (*Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998).)

Further, a claim for denial of access to courts necessarily requires plaintiffs to show resulting damages caused by the alleged denial, which a plaintiff cannot do when an action based on the underlying claim is pending. (*Karim-Panahi,* 839 F.2d at 625; *Carr v. Her*, 2:09-cv-0826 GEB, 2012 WL 25947, *12 (E.D. Cal. 2012).) In *Karim-Panahi,* the plaintiff claimed officers covered up Fourth Amendment violations by falsifying facts and destroying evidence, resulting in obstruction of justice. Because the underlying suit to determine whether the defendants violated Fourth Amendment rights was still pending, the ultimate resolution of the underlying suit remained in doubt. The cover-up claim thus was not ripe and properly dismissed. (*Karim-Panahi*, 839 F.2d at 625; *Carr,* 2012 WL 259457, at *12.)

JIN's backward-looking denial of access claim based on an alleged cover-up likewise is premature and fails to state a claim. Her claims that CORVELLO used excessive force and wrongfully arrested her are still pending in this action. She has not, and cannot, currently plead that she has sustained any damage as a result of an alleged cover-up. If JIN succeed in this action then she cannot have been denied access to the court and will sustain no damage from any alleged cover-up. Her claims are

18

indistinguishable from the claims in *Karim-Panahi, supra,* and *Carr, supra,* and likewise premature. JIN cannot merely guess that this action will be ineffective. (*Waiton*, 2014 WL 3362160 at *2.)

### b. Section 1983 conspiracy claim are unsupported by facts

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights. … 'Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence …To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." (*Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010), *citing Mendocino Environ. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).) "The defendants must have, 'by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage.'" (*Mendocino Environ. Ctr.*, 192 F.3d at 1301.) Further, pleading a conspiracy requires more than a conclusory allegation that defendants conspired to deprive plaintiff's civil rights. The Ninth Circuit applies a heightened pleading standard to §1983 conspiracy claims and holds that bare allegations a defendant conspired with another are insufficient. (*Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1998).)

JIN's complaint here fails to state any §1983 conspiracy claim for several reasons. First, to the extent the claim is based on the alleged subsequent cover-up, such claims do not implicate the violation of any constitutional or federal statutory right. JIN has no constitutional or federal right to a particular investigation, investigation procedure, finding, or conclusion. Claims based on the manner in which the incident subsequently was investigated fail to support any claim under §1983, including a conspiracy claim, as defendants cannot be liable for conspiracy under §1983 that does not result in violation of a constitutional or federal right. To the extent JIN asserts the alleged conspiracy violated her "right of access" to courts, the claim is not ripe for the reasons set forth in above. Second, the complaint states no facts showing any agreement or "meeting of the minds" between any of the defendants, or any facts showing the defendants had a common objective or plan to violate JIN's constitutional rights, and there is no basis to impose liability upon AHERN, MCGRORY, or HOUGHTELLING for the completed acts of CORVELLO in the underlying incident. JIN's vague allegations and conclusions of a conspiracy are

insufficient to satisfy the Ninth Circuit's heightened pleading requirements to state a valid conspiracy claim, or to meet JIN's pleading burden under *Iqbal* and *Twombly*. (*Harris,* 126 F.3d at 1195; *Burns* 883 F.2d at 821.) JIN's conspiracy claims are unsupported by sufficient facts to withstand dismissal.

### G.     Count Six Fails To State Claims For Violation Of Civil Code §§51.7 Or 52.1

JIN's claims for violation of the Unruh Act, Civ. Code §§51 *et seq.* against "All Defendants" is barred by her failure to show compliance with the Claims Act. Claims for damages under Civ. Code §51.7 and §52.1 are subject to the claim presentation requirements of the Government Claims Act. (*Gatto v. Cnty. of Sonoma*, 98 Cal.App.4th 744, 763 (2002).) Section 51.7 and 52.1 damage claims against public entities and employees thus are conditioned on compliance with the presentation requirements of the Claims Act. (*Id*. at 765.) As set forth in Section "D" above, JIN fails to allege facts showing compliance with the Claims Act requirements as to either the COUNTY or the CITY, and she fails to show that her claims under Civ. Code §§51 *et seq.* and 52.1 were fairly reflected in a timely written claim. JIN's claims against the individual defendants similarly are subject to dismissal. Government Code §950.2 requires the presentation of a timely claim and rejection of the claim as a prerequisite to suit against a public employee. (*See Taylor v. Mitzel,* 82 Cal.App.3d 665, 671 (1978); *Fowler v. Howell,* 42 Cal.App.4th 1746, 1750 (1996).) JIN's factually unsupported conclusion that she complied with the claim requirements as to either the COUNTY *or* the CITY is insufficient. JIN's §§51 *et seq.* claims thus should be dismissed as to all defendants because the complaint fails to state facts showing compliance with the Claims Act.[5]

Additionally, the complaint fails to state facts to state valid claims under §51 *et seq.* or §52.1. Section 51.7 grants the right "to be free from any violence or intimidation or by threat of violence, committed against their persons…because of their…disability…" To plead a prima facie case of unlawful discrimination under §51.7, a plaintiff must allege *facts* showing "that the defendant committed violent acts against the victim or his property, that a motivating reason for the violent acts was the victim's protected characteristic, that the victim was harmed, and that the defendant's conduct was a substantial factor in causing the harm." (*Gabales v. Cnty. of San Joaquin*, 2009 WL 2923037 at *15 (E.D. Cal. 2009); *Austin B. v. Escondido Union Sch. Dist.,* 149 Cal. App. 4th 860, 880-881 (2007).)

---

[5] JIN's seventh and eighth counts for negligence and assault and battery under state law also are subject to dismissal for failure to state facts showing compliance with the Claims Act.

JIN's complaint fails to show that CORVELLO's alleged conduct was motivated by her claimed disability. No facts are stated showing that CORVELLO even was aware that JIN was deaf and that her failure to communicate was because of a disability rather than some other reason. No facts are stated to support a §51.7 claim against CORVELLO. Further, §51.7 "requires violence or a threat of violence; it is, after all, a 'hate crimes' statute.…There can be no 'threat of violence' without some expression of intent to injure or damage plaintiffs or their property." (*Ramirez v. Wong,* 188 Cal.App.4th 1480, 1486 (2010).) The complaint states no facts showing any violence or threat of violence against JIN by AHERN, MCGRORY, or HOUGHTELLING, and the individual defendants are not vicariously liable for the alleged acts of others as a matter of law. (Govt. Code §820.8.) JIN's §51.7 claim thus fails against AHERN, MCGRORY, and HOUGHTELLING.

JIN's §52.1 claim also is unsupported by facts. Section 52.1 proscribes interference or attempted interference by any person by threats, intimidation or coercion with rights secured by the Constitution or laws of the United States. (§52.1(a); *Tolosko-Parker v. Cnty. of Sonoma,* 2009 WL498099 *5 (N.D. Cal. 2009); *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 883 (2007); *Barsamian v. City of Kingsburgh*, 597 F.Supp.2d 1054, 1057 (E.D. Cal. 2009).) It does not extend to regular tort actions. (§52.1(a); *Shoyoye v. Cnty. of Los Angeles,* 203 Cal.App.4th 947 (2012); *Meyers v. City of Fresno,* 2011 WL902115 (E.D. Cal. 2011); *Venegas v. Cnty. of Los Angeles,* 32 Cal.4th 820, 843 (2004).) To state a claim under §52.1, "Plaintiff must plead facts showing violence or intimidation by threat of violence by the accused defendant. *Cabesuela v. Browning-Ferris Indus.,* 68 Cal.App.4th 101, 111 … (1998); *see also Winarto v. Toshiba America Electronics Components, Inc.,* 274 F.3d 1276 (2001). Speech alone is insufficient … [unless] the speech itself … threaten[s] violence and places the victim in reasonable fear of violence. Cal. Civ. Code §52.1(j)." (*Clifford v. Regents of Univ. of Cal.,* 2012 WL 1565702, *9 (E.D. Cal. Apr. 30, 2012), aff'd, 584 F.App'x 431 (9th Cir. 2014) (emphasis added).) "[A] plaintiff must allege that the defendant engaged in violence or threat of violence." (*Gottschalk v. City & Cnty. of San Francisco,* 964 F.Supp.2d 1147, 1163 (N.D. Cal. 2013), *citing Corales v. Bennett*, 567 F.3d 554, 564, 570-571 (9th Cir. 2009); Civ. Code §52.1(j).) There are no facts showing violence or threat of violence against JIN by AHERN, MCGRORY, or HOUGHTELLING, and the individual defendants are not vicariously liable for the alleged acts of others as a matter of law (Govt. Code §820.8). The complaint

thus fails to state a §52.1 claim against AHERN, MCGRORY, or HOUGHTELLING.

**H.**     **Count Seven Is Fails To State A Negligence Claim Against All Defendants**

JIN's complaint fails to state facts to state a negligence claim against AHERN, MCGRORY, or HOUGHTELLING. The elements of a negligence claim are "duty to use due care and breach of duty, which proximately causes injury." (*Lopez v. City of Los Angeles,* 196 Cal.App.4th 675, 685 (2011); *Homes v. Summer*, 188 Cal.App.4th 1510, 1528 (2010).) "'Absent a legal duty, any injury is an injury without actionable wrong.'" (*J.L. v. Children's Inst., Inc.,* 177 Cal.App.4th 388, 396 (2009).) "The existence of a duty of care is a question of law to be determined by the court alone." (*Parsons v. Crown Disposal Co.,* 15 Cal.4th 456, 472-473 (1997).) JIN's complaint merely concludes that each defendant owed her a duty of due care: in rendering police services; using reasonable tactics; not abusing police authority; not violating her rights; hiring investigating, training, supervising, monitoring, evaluating, and disciplining ACSO employees; making and enforcing policies and customs on behalf of the ACSO; and to refrain from wrongful policies and customs. (Complaint ¶¶85-86.) It is well settled that "a person does not, by becoming a police officer, … assume any greater obligation to others individually. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.'" (*Williams v. State of Cal.*, 34 Cal.3d 18, 23-24, fn. 3 (1983).) The complaint shows that AHERN, MCGRORY, and HOUGHTELLING were not present at the incident and had no contact with JIN, and she fails to state facts showing a duty of care owed by these defendants. For example, the complaint states no facts to show that HOUGHTELLING or MCGRORY, mid-ranking officers for the ACSO, have any authority or duty to hire ASCO employees or to make or alter ASCO policies. JIN also states no facts showing a breach of duty by AHERN, MCGRORY, or HOUGHTELLING, and merely concludes they breached the duties owed to her. (Complaint ¶87.) No facts are stated related to hiring, training, supervision, tolerating wrongful policies, etc. In fact, the complaint shows a policy to provide accommodations to deaf individuals existed but allegedly was not followed by CORVELLO in the particular incident. (Id. ¶30, fn. 1) No facts are stated showing that CORVELLO's alleged failure to follow policy was related to any breach of duty by AHERN, MCGRORY, or HOUGHTELLING.

Further, no facts are stated that AHERN, MCGRORY, or HOUGHTELLING's conduct caused the alleged excessive force by CORVELLO, or JIN's alleged injuries. "'[A]bstract negligence,' without

proof of a causal connection between the defendant's breach and the plaintiff's injury is insufficient to sustain [liability]." (*Saelzler v. Advanced Grp.* (2001) 400 25 Cal.4th 763, 773.) "'If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries.'" (*Mitchell v. Gonzales,* 54 Cal.3d 1041, 1052 (1991); *Nola M. v. Univ. of So. Cal.*, 16 Cal.App.4th 421, 439 (1993).) There are no facts showing that any conduct by AHERN, MCGRORY, or HOUGHTELLING had a causal connection to CORVELLO's alleged use of force and JIN's injury, and they are not liable for CORVELLO's alleged conduct as a matter of law. (Govt. Code §820.8.) The complaint is insufficient to plausibly state a negligence claim against AHERN, MCGRORY, and HOUGHTELLING.

## I. Count Eight For Assault And Battery Is Unsupported By Facts

As set forth above, JIN's complaint fails to state facts showing compliance with the Claims Act. Her vague, factually unsupported conclusion that she submitted a timely claim to one entity or another is insufficient to show compliance as to a particular defendant, and fails to show that JIN's claims were fairly reflected in her purported claim. JIN's assault and battery claim, therefore, is subject to dismissal.

## J. The Complaint Fails To State Facts To Support Claims For Injunctive Relief

JIN seeks vague injunctive relief (1) requiring the COUNTY and the CITY "to fund with no monetary restrictions, an independent agency to oversee compliance with all injunctive relief ordered, and with complete authority to remove any and all officers"; (2) prohibiting defendants "from engaging in… unconstitutional customs, policies, practices, and procedures"; (3) requiring implementation of "policies and procedures to ensure that ACSO personnel have access to qualified sign language interpreters and auxiliary aids and services at all times"; and (4) requiring the entities to "revise and update [their] training and supervision programs to educate…officers and employees about providing effective communication and auxiliary aids to persons wo are deaf or hard of hearing…" (Complaint 25:4-17.) No facts are alleged showing that JIN has standing to seek equitable relief, or justifying such extraordinary judicial relief. The injunctive relief sought is precisely the type of judicial administration of state police powers disfavored by the Supreme Court and Ninth Circuit. "[R]ecognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers…in the absence of irreparable injury which is both great and immediate." (*City of*

Los Angeles v. Lyons, 461 U.S. 95, 112 (1983).) Rather, "it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." (*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992).) "[T]he basis for injunctive relief in the federal courts has always been...the inadequacy of legal remedies." (*Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982). "[D]amages [are] regarded as the ordinary remedy for an invasion of personal interests in liberty." (*Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 395 (1971).) "'A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable." (*Hodgers-Durgin v. Gustavo De La Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).) Equity "militate[s] heavily against the grant of an injunction except in the most extraordinary circumstances." (*Id.*; *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 165 (2010).) If a less drastic remedy is sufficient, no recourse to the additional and extraordinary relief of an injunction is warranted. (*Monsanto,* 561 U.S. at 165-166.)

In *Updike,* the Ninth Circuit found Updike failed to establish standing for injunctive relief against the State or County because he failed to show a "real and immediate threat of repeated injury." (*Updike*, 870 F.3d at 947-948.) It was unlikely the failure to provide an ASL interpreter at future court appearances would recur because information about necessary accommodations was since noted in the booking registers, and Updike failed to show he was likely to be a pretrial detainee again. (*Id.* at 948.) He also lacked standing for injunctive relief against the County because the possibility of recurring injury by the County was speculative. "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." (*Id.*) Updike identified no County polices or practices that would subject him to a realistic possibility of future injury. (*Id.*) Further, the presumption that Updike would likely act within the law such that he would not be arrested and detained again weighed against standing for injunctive relief. (*Id., citing O'Shea v. Littleton*, 414 U.S. 488, 497 (1974).) Updike failed to show "sufficient immediacy and reality" to his allegations of future injury, thus he failed to establish standing to pursue injunctive relief claims. (*Updike,* 870 F.3d at 948.)

The complaint fails to show "the likelihood of substantial and irreparable injury and the inadequacy of remedies at law" or a "real and immediate threat of repeated injury" to establish standing for injunctive relief claims. (*Lyons*, 461 U.S. at 111.) Her complaint states that an agreement between the COUNTY and the DOJ exists "to resolve all issues associated with the provision of effective

24

communication with persons who are deaf, hard of hearing, and deaf-blind so that they may participate in or benefit from the services, programs or activities of the Sheriff on an equal basis with other individuals…" (Complaint ¶30, fns. 1-3, Settlement Agreement "*available at* https://www.ada.gov/alameda_county_sa.html.") Also, it is presumed JIN will follow the law, and she states no facts that she is likely to be arrested again. She states no <u>facts</u> showing *any* "threat of future harm," and her allegations are "simply too speculative to warrant an equitable judicial remedy". (*Hodgers-Durgin*, 199 F.3d at 1044; *Updike,* 870 F.3d at 948.) JIN also fails to show inadequacy of remedies at law, as she may, and has, pursued a damages action. Further, the orders sought effectively seek implementation of particular police policies and procedures and the allocation of local government funds, which would require the Court's "future intervention that would be so intrusive and unworkable." (*Hodgers-Durgin*, 199 F.3d at 1042.) JIN's conclusions are insufficient to establish standing to assert claims for injunctive relief, or to state a claim upon which such relief may be granted in this case.

**K.     The Prayer For Punitive Damages Against The Entity Defendants Is Untenable**

A motion to strike may be used to strike portions of the complaint where the relief sought is not recoverable as a matter of law. (FRCP Rule 12(f) *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005).) Punitive damages are not recoverable against public entities under 42 U.S.C. §1983 or state law. (*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Mitchell v. Dupnik,* 75 F.3d 517, 527 (9th Cir. 1996); Cal. Code Civ. Proc. §3294; *Wilhite v. City of Bakersfield*, 2012 WL 273088 (E.D. Cal 2012).) JIN's demand for punitive damages is not limited to the individual defendants, and is improper against the COUNTY and CITY and should be stricken. (Complaint 25:2-3, 20-21.)

**IV.     CONCLUSION**

For the reasons set forth above, defendants respectfully submit that the motion to dismiss JIN's complaint be granted and the punitive damages prayer against the public entity defendants be stricken.

Dated: September 13, 2018                    BERTRAND, FOX, ELLIOT, OSMAN & WENZEL

                                             By:     */s/ Michael C. Wenzel*
                                                     Michael C. Wenzel
                                                     Amy Leifur Halby
                                                     Attorneys for Defendants